IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS E. MORALES TIRADO,<br><br>Plaintiff,<br><br>v.<br><br>EMILIANO CRUZ, ET AL.,<br><br>Defendants. | CIVIL NO. 10-2248 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On December 20, 2010, plaintiff Carlos E. Morales-Tirado (hereafter "plaintiff Morales") filed a complaint against defendants under the Second, Fourth and Fourteenth Amendment of the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. §1983, and pendent state law claims under Article 1802 of the P.R. Civil Code, 31 L.P.R.A. §5141 and the Constitution of the Commonwealth of Puerto Rico. In essence, plaintiff Morales submits he has been deprived of his Second Amendment right to bear arms when defendants, Puerto Rico Police officers identified below, searched plaintiff Morales' house and seized the firearms he claims to have legally possessed. (Docket No. 1).[1]

Defendants Emiliano Cruz, Miguel A. Grullón López and Luis M. Ortíz, their respective conjugal partnership, (hereafter "defendants") answered the Complaint as filed in their individual capacities. (Docket No. 8). These defendants deny, among others, having illegally searched or seized firearms of plaintiff Morales because he consented to

---

[1] The document is entitled "Amended Complaint" although it is the first and only complaint.

Case 3:10-cv-02248-CVR   Document 31   Filed 02/16/12   Page 2 of 20

Carlos E. Tirado-Morales v. Emiliano Cruz, et al
Civil No. 10-2248 (CVR)
Opinion and Order
Page No. 2

allow them into his home. Defendants also raise in their answer to the Complaint they are entitled to qualified immunity for, at the time of the events of the Complaint, it was not clearly established the Second Amendment applied to the states and plaintiff Morales has failed to exhaust administrative remedies. (Docket No. 8). Co-defendant Mayra Maldonado-Rivera later answered the Complaint raising similar defenses. (Docket No. 14).

Thereafter, co-defendants Cruz, Grullón, Ortíz and Maldonado-Rivera filed a Motion to Dismiss and/or for Judgment on the Pleadings. (Docket No. 24). Plaintiff Morales submitted the corresponding Opposition. (Docket No. 30).

The parties consented to jurisdiction by a Magistrate Judge for all further proceedings. (Docket Nos. 15, 19 and 20). Thus, it is now proper to discuss the pending request for dismissal and/or judgment on the pleadings.

**STANDARD OF REVIEW FOR JUDGMENT ON THE PLEADINGS**

The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir.2005); Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998).

A motion to dismiss filed after the complaint has been answered is treated as a motion for judgment on the pleadings. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissal may be warranted for failure to state a claim upon which relief can be granted. To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). A complaint must set forth "factual allegations,

either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

The Supreme Court most recent opinion changes the standard for a motion to dismiss so that plaintiff will now have to include more information in the pleadings if he/she wants to survive a 12(b)(6) motion. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007).[2]

The First Circuit has cited to this decision and noted this new standard in Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), wherein, as stated in part below indicated:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Twombly, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id*. at 1968, 1969.

---

[2] No heightened fact pleading of specifics is required but only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic, 127 S.Ct. at 1974.

Similarly under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the factual statements of the complaint are still considered true, indulging every reasonable inference helpful to plaintiffs' cause. However, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions and mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

**LEGAL DISCUSSION**

Defendants submit plaintiff Morales' claims against all defendants arise from a domestic violence complaint received on December 22, 2009, by Ms. Irma Z. Márquez Rivera, who had a relationship with plaintiff. Upon the filing of a criminal complaint #2009-4-036-14691, the Police agents were informed plaintiff Morales possessed two (2) firearms. One (1) of the licenses issued to plaintiff for hunting by the Department of Natural Resources expired on June 30, 2004, and was cancelled. A second firearm license issued by the Puerto Rico Police Department expired on January 26, 2009. When the Police officers went that evening to plaintiff Morales' residence, he allowed them inside and the officers took custody of the two (2) firearms; one Beretta pistol and a Remington rifle, completing a certification of receipt of firearms and/or ammunition. Defendants further aver the domestic violence incident, stalking and threats to the family and friends of the complainant by plaintiff Morales, as well as his lack of a valid license for the firearms, were considered exigent circumstances which allowed a search without a warrant to secure and temporarily seized the firearms, even if plaintiff would not have consented to the search.

Moreover, on said date, a municipal judge, Francisco J. Oquendo Solis, from the Humacao Municipal Court, issued an *ex-parte* order of protection under the Puerto Rico Domestic Violence Act, Law No. 54, against plaintiff Morales.

Defendants submit the pleadings of the Complaint have not set forth particularized allegations to satisfy the pleading standard articulated in Ashcroft v. Iqbal, 556 U.S. at 662, 129 S.Ct. at 1949 and neither do they link the appearing defendants with actionable conduct as to how they violated plaintiff's constitutional rights. Insofar as the claim under the Second Amendment, at the time of the events described in the Complaint, there was no knowledge of the personal right of an individual to keep and bear arms that had been recognized against the states. Such right was first presented through the judicial decision of Heller v. City of Chicago, ___ U.S. ___, 130 S.Ct. 3020, 3026 (2010), that is late in June of 2010, for which reason the events described in the complaint six (6) months earlier, would not have been recognized by defendants as a constitutional violation for which they should be entitled to qualified immunity.

Plaintiff Morales filed his opposition to the request for dismissal, judgment on the pleadings and/or qualified immunity. Plaintiff Morales avers there are sufficient factual allegations in the Complaint for the requested relief. As to specificity in presenting the individual defendant's participation, plaintiff indicates they all actively and personally participated in the deprivation of his rights. As to co-defendants Cruz, Grullón, Maldonado and Ortíz, plaintiff Morales submits they acted "under color of law" when they searched his house without his consent and illegally seized his firearms, having thus conducted and

illegal search and seizure. Such action is considered a civil rights violation under Section 1983, as well as grounds for a Fourth Amendment claim. Plaintiff objects to consideration of any facts and circumstances outside the pleadings, for which dismissal at this stage of the proceedings should not be allowed. In the alternative, plaintiff Morales submits there were no exigent circumstances that would warrant the acts of defendants, for there was no order of arrest against him because it was obtained the day after the search occurred. Plaintiff further denies there was any known protection order against him or that the alleged domestic disturbance took place in his house or its vicinity. On above grounds, plaintiff Morales denies the compelling necessity for immediate law enforcement action at the time before obtaining a warrant. Still, plaintiff Morales does not deny the domestic disturbance took place but rather that it was outside his home or not in the site where the search took place. Neither does plaintiff Morales deny the *ex-parte* protection order was indeed issued, solely that no warrant of arrest was in effect at the time.

A motion to dismiss and/or judgment on the pleadings allows for the Court to consider not only the Complaint but also matters fairly incorporated within it and matters susceptible of judicial notice. An affirmative defense may also be adjudicated on a motion to dismiss. A defendant public official may raise a defense of qualified immunity on pleadings in a motion to dismiss, and on such pleading of qualified immunity defendant is entitled to dismissal before commencement of discovery. Qualified immunity recognizes that litigation is costly to defendants. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985); Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009) (threat bare recital of the

elements of a cause of action supported by mere conclusory statements, do not suffice to defeat a motion to dismiss for only a complaint that states a plausible claim for relief survives a motion to dismiss). Statements to the effect that a plaintiff was illegally and unreasonably detained or that excessive use was used in pushing him to the floor are considered legal conclusions that are not to be credited to defeat dismissal for insufficient pleading of a cause of action. See Soto-Torres v. Fraticelli, 654 F.3d 153, 157 n. 2, (1st Cir. 2011).

## A. Second Amendment.

### 1. Constitutional Right to Keep and Bear Arms.

Defendants claim they are entitled to qualified immunity as to plaintiff Morales' Second Amendment claim. Qualified immunity provides not only immunity from liability but also immunity from suit. Mitchell v. Forsyth, 472 U.S. at 526, 105 S.Ct. 2815. A public officer is entitled to have the claim of qualified immunity resolved initially on the pleadings alone if his right to immunity is manifest from the pleadings.[3]

The qualified immunity analysis requires a court to decide (1) whether the facts alleged or shown by plaintiff make out a violation of a constitutional right and (2) if so, whether the right was clearly established at the time of defendant's alleged violation. In examining the clarity of the law at the time of the alleged violation, and the qualified immunity defense thereunder, in light of Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808

---

[3] Government official's right to qualified immunity and its appealability is necesary to avoid the distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service. Mitchell v. Forsyth, 472 U.S. at 526, 105 S.Ct. At 2815.

(2009), Courts are allowed to conduct the inquiry sequentially or resolve a particular case on the second prong alone. Barton v. Clancy, 632 F.3d 9, 22 (1st Cir. 2011).

There is no doubt, on the basis of both text and history, that the Second Amendment confers an individual the right to keep and bear arms, but one which is not unlimited, just as the First Amendment's right of free speech is not, see, *e.g.*, United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830 (2008). The Second Amendment to protect the right of citizens to carry arms is not considered an entitlement to avail of said right for *any sort* of confrontation, just as the Courts have not read the First Amendment to protect the right of citizens to speak for *any purpose*. *See* B. Abbott, Judge and Jury: A Popular Explanation of the Leading Topics in the Law of the Land 333 (1880). *See* District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783 (2008) (J. Scalia).

Insofar as defendants Grullón, Maldonado and Ortíz, the Complaint refers that these defendants, under the command and supervision of co-defendant Cruz, conducted a warrantless search of plaintiff Morales' house and during the search they illegally seized a 9mm Baretta Pistol, Pietro Model, serial num. L224162, a Remington Rifle, Model 1187, 12 Caliber, serial num. PC1T3935 and a 12 bullet 9mm pistol magazine. (Docket No. 1, ¶3.4).

Domestic disturbances are precisely the kind of exigent circumstances that may justify a warrantless entry into the home and the seizure of firearms. In fact the community expects police officers to avoid delay, as an exception to a warrant requirement, to promptly aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide other reasonable and effective actions that could preserve and protect the public or a potential victim. Officers cloaked with such exigent circumstances would also

be entitled to qualified immunity if it is objectively reasonable to an officer under said circumstances that there was no constitutional violation. Fletcher v. Town of Clinton, 196 F.3d 41, (1st Cir. 1999). The test to determine exigent circumstances is whether there is such compelling necessity for immediate action and will not brook delay of obtaining warrant. United States v. Donlin, 982 F.2d 31 (1st Cir. 1992). *See* Coolidge v. New Hampshire, 403 U.S. 443, 474-75, 91 S.Ct. 2022, 2042-43 (1971). *See also* Kentucky v. King, 563 U.S. ___ (2011) (no Fourth Amendment when exigent circumstances, not created by the law enforcement officers' acts is present to justify a warrantless search).

Although unrelated as to the any subsequent acts by above defendants Grullón, Maldonado, Ortíz and Cruz, the Complaint further refers that the following day plaintiff Morales visited the Humacao Area Police Headquarters to ascertain why his firearms were taken and where they had been stored. Plaintiff Morales claims he was ignored by the desk officer in charge and told to visit two (2) weeks later to determine where the firearms had been stored. Plaintiff Morales returned two (2) weeks later and was informed no one knew where his firearms where. For some time plaintiff Morales states he continued to visit the Humacao Police Headquarters without receiving information as to the whereabouts of his firearms. He also visited the San Juan Headquarters. Plaintiff Morales believed at the end he had lost his firearms. (Docket No. 1, ¶3.8).

The claim of deprivation of the possession of the firearms has not been related to the defendants Grullón, Maldonado, Ortíz nor Cruz, for their alleged participation was as to the original seizure of the firearms. Plaintiff Morales submits a generalized averment as to the acts and omissions of these defendants, without particularity, to be considered to

constitute deliberate indifference or reckless disregard towards the right of plaintiff to keep and bear arms in violation of the Second Amendment. (Docket No. 1, ¶4.5).

**2.     Procedural Due Process Violation.**

Plaintiff Morales avers in the Complaint he was the object of a constitutional right violation when he was deprived, without legal cause and without procedural due process, of his right to keep and bear arms.

Upon analyzing the history of the Second Amendment the Highest Court has held "that the Second Amendment conferred an individual right to keep and bear arms." Heller, 554 U.S. 570, 128 S.Ct. at 2799. Still, the Constitution left to the District of Columbia in Heller a variety of tools for combating the problem of handgun violence, which included some measures regulating handguns, but sort of apprised it could not include an absolute prohibition of handguns held and used for self-defense in the home. Heller, 128 S.Ct. at 2822.

Plaintiff Morales submits in the Complaint he was subject of a due process violation in connection to deprivation of property, referring to his firearms, as actionable under §1983 through the Fourteenth Amendment. However, said alleged constitutional violation is not considered complete when the deprivation occurs for it becomes effective only when afterwards the State fails to provide due process.

Insofar as an alleged constitutional violation, a city's failure to return arrestee's handgun and ammunition, after unlawful-use-of-weapon charge against him was dropped and warrant for his arrest was deactivated, was found not to violate his Second Amendment right to keep and bear arms, for city's policy and action affected only one of arrestee's

firearms, which was lawfully seized, and city did not prohibit arrestee from retaining or acquiring other firearms. *See* Walters v. Wolf, 660 F.3d 307 (1st Cir. 2011).

As to the alleged Second Amendment violation of plaintiff's right to keep and bear arms as recently articulated by the Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783 (2008), and McDonald v. City of Chicago, __ U.S. __, 130 S.Ct. 3020 (2010), the district court concluded, and was so affirmed on appeal, that Heller and McDonald did not establish the right to possess a specific firearm. *See* Walters v. Wolf, 660 F.3d 307 (1st Cir. 2011) (in Heller, the Court recognized that "the right secured by the Second Amendment is not unlimited nor grants a right to possess a specific firearm", 554 U.S. at 626, 128 S.Ct. 2783). Hence, the court determined plaintiff must do more than show that he was deprived from possessing one particular firearm to establish a violation of the Second Amendment; rather plaintiff must also show that he has been kept from acquiring any other legal firearm. *See* Daniel E. Feld, J.D., *Federal constitutional right to bear arms*, 37 ALR Fed. 696 (1978); *and see Gun Seizure Unconstitutional: not Violation of Second Amendment*, 29 No. 12 McQuillin Mun. Law Rep. 1 (2011).

Thus, even upon a reading of the above stated claims by plaintiff Morales, taken as true, the Complaint fails to present a due process claim under the Fourteenth Amendment for the state officers did not deprive plaintiff of his right to bear arms but as to specific arms that were seized at the time of a search conducted at his home. *See* Walters v. Wolf; *see also* Garcha v. City of Beacon, 351 F.Supp.2d 213 (S.D.N.Y. 2005).

In any event, as to any such due process claim, plaintiff Morales still has available administrative proceedings to follow and even a state judicial action for return of any legally

possessed property, not a federal constitutional claim for adequate post-deprivation process which satisfies the requirements of due process. All plaintiff Morales avers as to said due process claim is that he believes to have lost his firearms when after visiting the Police Headquarters he has not been able to find their whereabouts. No reference is made as to having filed an administrative claim and/or any other request for return of property being denied.

### 3. **Qualified Immunity.**

In the alternative, and if the Complaint would have been considered to have pleaded a sufficient Second Amendment claim (matter we deny), defendants Grullón, Maldonado, Ortíz and Cruz would be entitled to qualified immunity for the events regarding Morales took place on December 2009, when the Second Amendment had not yet been ruled to apply to the states. Heller, 554 U.S. at 570, 128 S.Ct. At 2783; *see* Garcha, 351 F.Supp.2d at 213 (city and police officers did not violate arrestee's Second Amendment right to bear arms by confiscating his pistol incident to his arrest for criminal mischief, disorderly conduct, and harassment, and later destroying pistol by order of city court; at worst, city converted a single gun belonging to defendant by causing its destruction, but it did not infringe on arrestee's right to keep and bear arms, or prevent him from acquiring another weapon). *See* James Lockhart, J.D.**,** *Construction and Application of United States Supreme Court Holdings in District of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) and McDonald v. City of Chicago, Ill., 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) Respecting Second Amendment Right to Keep and Bear Arms, to State or Local Laws Regulating Firearms or Other Weapons,* 64 ALR6th 131 (2011).

Defendants Grullón, Maldonado, Ortíz and Cruz are entitled to qualified immunity as to the alleged Second Amendment deprivation for the criteria for qualified immunity has been met, in that the law was not clearly established and there was no reasonable belief for defendants to consider having violated plaintiff's rights. "The law is 'clearly established' if courts have ruled that materially similar conduct was unconstitutional, or if there is a previously identified general constitutional principle that applies with obvious clarity to the specific conduct at issue." Cortés-Reyes v. Salas Quintana, 608 F.3d 41, 52 (1st Cir. 2010).

As to the Second Amendment right to keep and bear arms, courts that have considered the issue have determined in similar circumstances that a right of individuals to possess and bear firearms for private civilian purposes, as opposed to military purposes, was not clearly established before 2010, when the Supreme Court then decided McDonald, \_\_U.S. \_\_, 130 S.Ct. at 3020, when for the first time the Highest Court found that the Second Amendment applies to the states.

Even if plaintiff Morales's allegations establish that defendants prohibited plaintiff from bearing arms, which as above discussed they did not, Puerto Rico Police law enforcement officers would be entitled to qualified immunity on plaintiffs' section 1983 claims that officers violated plaintiffs' Second Amendment rights if they seized his firearms during the search of his residence. *See* Marín v. Toledo, 2009 WL 790047 (J. Delgado-Colón).

**B.    Fourth Amendment Claim.**

As to the Fourth Amendment claim which is based on the same events as the Second Amendment violation, to establish a violation in a §1983 action, plaintiff must show not only that a seizure occurred but also the seizure was unreasonable. All plaintiff Morales claims as to this seizure, besides the firearms being seized, is that he was detained outside his home while the state agents conducted the search to retrieve the weapons. The Complaint does not refer even to plaintiff being handcuffed, although he submits he held the subjective believe that ". . . the individual defendants were corrupt officers who would fabricate a case against him or even kill him upon learning that there was nothing of value in his house." (Docket No. 1, ¶3.6).

When law enforcement officers detain a person but stop short of making an arrest, the Fourth Amendment mandates that the officers act reasonably in light of all the circumstances. *See* Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868 (1968). In assessing whether the individual's Fourth Amendment rights was infringed, one must address first whether there was a detention within the meaning of the Fourth Amendment and second whether, if there was a detention, it was reasonable in light of the circumstances. Desyllas v. Bernstine, 351 F.3d 934 (9th Cir. 2003).

To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable. Tower v. Leslie-Brown, 326 F.3d 290 (1st Cir. 2003) (to consider if seizure of property or person was unreasonable under the Fourth Amendment the court will balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable or if

exigent circumstances were present; Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir.1999).[4]

A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority. Although seizure requires restraint of an individual's liberty, not every government act resulting in a restraint of an individual's liberty constitutes a seizure. *See* Brower v. County of Inyo, 489 U.S. 593, 596–97, 109 S.Ct. 1378 (1989). To be a violation of the Fourth Amendment, the restraint in liberty must be effectuated "*through means intentionally applied.*" *Id.* at 597, 109 S.Ct. 1378; *see* Hawkins, 189 F.3d at 701. A Fourth Amendment "seizure" requires an intentional act by a governmental actor. Brower at 596–97, 109 S.Ct. 1378. In Brower, the Supreme Court explained "the Fourth Amendment addresses 'misuse of power,' ... not the accidental effects of otherwise lawful government conduct." *Id.* Brower makes clear, a seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71 (1989); Brower, 489 U.S. at 599, 109 S.Ct. 1378; Hawkins, 189 F.3d at 702. Reasonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular

---

[4] Furthermore, it is a violation of 18 U.S.C. §922(g)(8) to be in possession of a firearm when one is subject to a domestic restraining order.

situation." Graham v. Connor, 490 U.S. 396–97, 109 S.Ct. 1871-72; McCoy v. City of Monticello, 342 F.3d 842 (8th Cir. 2003); Gonzalez v. Village of West Milwaukee, ___ F.3d ___, 2012 WL 313572 (7th Cir. 2012) (the right to openly carry a firearm was hardly well established in Wisconsin under the state constitution at the timeand thus arresting officers were entitled to qualified immunity).

Police officers are not limited to their personal observations in conducting investigatory activities and they could be based on information furnished by others. When an information provides sufficient indicia of reliability, it warrants for the officer to reasonably rely on same to act upon it. United States v. Romain, 393 F.3d 63 (1st Cir. 2004) (extending the Terry rationale not solely to public encounters but also to protective and legitimate investigative activities, including emergencies, which bring the police to a person's home). Thus, for the most part *per se* rules are inappropriate in the Fourth Amendment context. United States v. Drayton, 536 U.S. 194, 201, 122 s.Ct. 2105 (2002).

Additionally, state law enforcement in particular is cloaked with a community care taking exception in that police performs a multitude of services to preserve and serve public safety not only actions geared by prosecution purposes. United States v. Coccia, 446 F.3d 333 (1st Cir. 2006). A Fourth Amendment claim in a civil action, as in the criminal context, does not rest upon bright-line rules but should recognize there are no single set of legal rules that can capture the ever-changing complexity of human life. As a consequence, the general terms of "unreasonable searches and seizures" has been subject of broad interpretations as to reasonable actions. *See* Georgia v. Randolph, 547 U.S. 103, 126 S.Ct.

1515 (2006) (discussing the police entering in a domestic dispute aside from entering for evidentiary searches). *See e.g.*, City of Indianapolis v. Edmond, 531 U.S. 32, 37, 121 S.Ct. 447 (2000)(The Fourth Amendment requires that searches and seizures be reasonable).

On such Fourth Amendment claims, the determination of whether a defendant in a civil claim is entitled to qualified immunity from liability can be made on a motion to dismiss when the complaint provides all of the facts needed to assess the plaintiff's claim. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 816 (2009). A right is "clearly established" if, at the time of the alleged violation, "[t]he contours of the right … [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Maldonado v. Fontanes, 568 F.3d at 269 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)).

It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage. Nevertheless, the determination can be made on a motion to dismiss when the complaint provides all of the facts needed to assess the plaintiff's claim. *See, e.g.,* Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir.2009) (holding that Fourteenth Amendment right to "intimate association" between two cohabiting adults was not "clearly established" law); Pagán v. Calderón, 448 F.3d 16, 32–37 (1st Cir.2006) (dismissing, on qualified immunity grounds, a corporation's claims that a former governor violated its Fourteenth Amendment rights by influencing a government lender to reject a loan). *See* Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010).

Similarly, the district court rejected all of an estate's causes of action and granted the defendants' motions to dismiss, for judgment on the pleadings, and for summary judgment even upon assuming that the pointing of firearms at a plaintiff amounted to a seizure of his person, *see* United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980) (listing "the display of a weapon by an officer" as an example of a circumstance that may indicate a seizure by means of a "show of authority"). *See* Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008).

From the pleadings of the instant Complaint, setting aside legal conclusions as to being illegally searched and subject of seizure, as well as a claim of being legally in his possession of firearms, the Fourth Amendment alleged violation is related to the removal of the firearms, without having endured any arrest or prosecution. As such, it does not defeat the judgment on the pleadings nor the qualified immunity sought by defendants. On the three levels of encounter between police and citizens the first, the consensual encounter and the investigative detention, which if not-consensual must be supported by reasonableness or exigent circumstances, plaintiff Morales was not subject to an investigative detention and did not reach, on the basis of his own pleading, to the third level of an arrest which must have been supported by probable cause.

As such, judgment on the pleadings is warranted as to the Fourth Amendment.

**D.    Pendent State Claims**.

Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional

Carlos E. Tirado-Morales v. Emiliano Cruz, et al
Civil No. 10-2248 (CVR)
Opinion and Order
Page No. 19

case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); Marrero Gutierrez v. Molina, 491 F.3d 1, 7 (1st Cir. 2007).[5]

In Gibbs, 383 U.S. at 726, the Supreme Court ruled a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See* Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995).

In the absence of surviving federal claims herein, this Court declines to exercise jurisdiction over state pendent claims which are to be dismissed without prejudice.[6]

## CONCLUSION

Having thus examined the Complaint and defendants' motion for judgment on the pleadings and/or dismissal, and plaintiff's opposition, this Magistrate Judge **GRANTS**

---

[5] While a district court may exercise supplemental jurisdiction over non-federal law claims, the court may also decline to exercise supplemental jurisdiction over a claim, if the district court has dismissed all claims over which it has original jurisdiction.

[6] The Complaint submitted general claims under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141, and the Constitution of the Commonwealth of Puerto Rico.

Carlos E. Tirado-Morales v. Emiliano Cruz, et al
Civil No. 10-2248 (CVR)
Opinion and Order
Page No. 20

defendants' request for judgment on the pleadings and for qualified immunity. (Docket No. 24).

Judgment is to be entered accordingly dismissing all federal claims with prejudice and pendent state claims without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of February of 2012.

                                      S/ CAMILLE L. VELEZ-RIVE
                                      CAMILLE L. VÉLEZ-RIVE
                                      UNITED STATES MAGISTRATE JUDGE

Carlos E. Tirado-Morales v. Emiliano Cruz, et al
Civil No. 10-2248 (CVR)
Opinion and Order
Page No. 20

defendants' request for judgment on the pleadings and for qualified immunity. (Docket No. 24).

Judgment is to be entered accordingly dismissing all federal claims with prejudice and pendent state claims without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of February of 2012.

                      S/ CAMILLE L. VELEZ-RIVE
                      CAMILLE L. VÉLEZ-RIVE
                      UNITED STATES MAGISTRATE JUDGE